## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

EMILIO CARRASCO,

*Plaintiff,*

vs.

Case No. 20-1322-EFM

CITY OF UDALL, KANSAS,

*Defendant.*

## MEMORANDUM AND ORDER

Plaintiff Emilio Carrasco alleges that employees of Defendant City of Udall, Kansas (the "City") improperly cut down and removed six cedar trees from the west side of his property. Carrasco brings this action under 42 U.S.C. § 1983 asserting that his Fifth and Fourteenth Amendment rights have been violated. He seeks damages from the loss of the trees and diminished property value. This matter comes before the Court on the City's Motion for Summary Judgment (Doc. 41). For the following reasons, the Court grants the City's motion.

### I.        Factual and Procedural Background[1]

In 1992, Carrasco purchased real property in the Ramat Halom subdivision of Udall, Kansas. The Ramat Halom subdivision was created in 1976, and the subdivision plat was filed of

---

[1] In accordance with summary judgment procedures, the Court has set forth the uncontroverted facts, and they are related in the light most favorable to the non-moving party.

record with the Cowley County Register of Deeds in 1976.  The plat diagram for the property

shows a 20-foot utility easement on several subdivision lots.  The plat diagram states the following

regarding the easement:

> Easements are hereby dedicated for public use, as utility easement right-of-way
> which are shown as lying between the dashed lines in width indicated as set forth
> on this plat unless otherwise noted, and said easements may be employed for the
> purpose of installing, repairing and maintaining gas lines, electric lines, telephone
> lines and all other forms and types of public utilities now or hereafter used by the
> public over, under, and along the strips marked "easements."

Additionally, the subdivision landowners expressly granted the Ramat Halom easement "to the

public for use of constructing, operating, maintaining, and repairing all public utilities."  When

Carrasco purchased his property in 1992, the certified mortgagee title inspection document he

received showed the 20-foot utility easement on the west side of the property, just as shown in the

Ramat Halom plat.  Carrasco does not deny the existence of the easement on his property.

Growing inside the utility easement on Carrasco's property were six cedar trees.  The trees

provided visual, noise, and wind protection for the property, and Carrasco hired a lawn and tree

maintenance company to treat them yearly.  The trees, however, were growing directly over the

area where the underground electric lines flowed into the City's above-ground transformer box.

In early 2020, the City determined that two of the three underground power lines were

malfunctioning and that it needed to dig the lines up and replace them before part of the City lost

all electrical power.  In addition to the need to repair the lines, tree roots can cause significant harm

to underground electric lines and cause them to malfunction.

On the morning of April 30, 2020, a City maintenance crew removed the six cedar trees

located on Carrasco's property.  Carrasco learned of the removal that morning, when he awoke to

the sound of the City's maintenance crew cutting down the trees.  Carrasco approached the City's

crew and asked what was going on.  They informed him that the City's mayor and police chief told them to cut down the trees and take them away.  Needing to leave for work, Carrasco left his house visibly frustrated and upset.  When he returned, only the tree stumps remained.

Carrasco's neighbor, Mitchell Kratochvil, lives in the house north of Carrasco's property. Kratochvil served two years on the Udall City Counsel, and six years as mayor.  His property has the same utility easement as Carrasco's.  He built a privacy fence 19.5 feet into the easement and a utility shed 16 feet into the easement.  In July 2020, Kratochvil attended the City Council meeting (1) to complain about the City taking Carrasco's trees without any communication to Carrasco or Carrasco's permission and (2) to tell the city they were wrong about the property line.  According to Kratochvil, the City's response as to the lack of notice was "we told you when we were cutting them down."

In September 2020, the City began seeking bids to replace the malfunctioning buried cable lines.  Three months later, in January 2021, the City approved the contract for an outside electrical company to replace the power lines.  The old electrical lines were dug up, and the new ones installed in April 2021.  The electrical lines were laid four to six feet outside Kratochvil's property and thus not within the City's utility easement.  However, the electrical lines were laid within the utility easement on Carrasco's property.

Carrasco sold his house and moved to a different city in May 2021.  He subsequently filed this lawsuit asserting that he had a protected property interest in the trees and that the City deprived him of this property interest without due process.  Specifically, Carrasco brings a § 1983 claim alleging that City violated the Takings Clause of the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment.  He seeks damages in the amount of $30,000 for the loss of the trees.  The City has moved for summary judgment on Carrasco's claims.

## II.     Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[2]  A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[3]  The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[4] If the movant carries its initial burden, the nonmovant may not simply rest on its pleading but must instead "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[5] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[6] The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[7]

## III.     Analysis

To prevail on a claim under § 1983, a plaintiff must show that (1) the defendant deprived the plaintiff of a constitutional right and (2) the defendant acted under color of state law.[8]  The

---

[2] Fed. R. Civ. P. 56(a).

[3] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[4] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 325 (1986)).

[5] *Id*. (citing Fed. R. Civ. P. 56(e)).

[6] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)).

[7] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[8] *Jaiyeola v. Garmin Int'l, Inc.*, 2020 WL 4678378, at *3 (D. Kan. 2020) (citing *Johnson v. Rodrigues*, 293 F.3d 1196, 1202 (10th Cir. 2002)).

-4-

City has moved for summary judgment on Carrasco's § 1983 claim on the basis that Carrasco cannot show that the City deprived him of either his Fifth or Fourteenth Amendment rights. The Court will examine each of the City's arguments in turn.

**A.     The removal of Carrasco's trees is not a "taking" under the Fifth Amendment.**

The Takings Clause of the Fifth Amendment to the U.S. Constitution states that private property shall not "be taken for public use, without just compensation." This limitation on governmental powers is applicable to the states through the Fourteenth Amendment.[9] Not every destruction of private property by the government, however, is considered a "taking" under the Fifth Amendment. The Tenth Circuit has held that if the government's action is a valid exercise of its police powers, then its actions do not constitute a "taking," and the property owner is not entitled to compensation.[10]

In *Lech v. Jackson*, the plaintiff homeowners brought a § 1983 Fifth Amendment claim against various police and law enforcement agencies after they destroyed the plaintiffs' home in the process of apprehending an armed criminal suspect.[11] The plaintiffs were not involved in the wrongdoing.[12] The Tenth Circuit denied the plaintiffs relief, holding that "when the state acts pursuant to its police powers, rather than the power of eminent domain, its actions do not constitute a taking for purposes of the Takings Clause."[13] The Circuit found that the police agencies' actions

---

[9] *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 163 (1998) (citation omitted).

[10] *Lech v. Jackson*, 791 F. App'x 711, 717 (10th Cir. 2019).

[11] *Id*. at 713.

[12] *Id*.

[13] *Id*. at 717. *See also Jonson v. Manitowoc Cnty.*, 635 F.3d 331, 335 (7th Cir. 2011); *Ostipow v. Federspiel*, 824 F. App'x 336, 341 (6th Cir. 2020); *Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1332-33 (Fed. Cir. 2006).

were an exercise of "police power," which it defined broadly as the authority "to provide for the public health, safety, and morals."[14]

Here, the removal of Carrasco's trees growing within the City's utility easement was not a taking under the Fifth Amendment.  The uncontroverted facts show that the electrical lines beneath the trees were malfunctioning, and if the City did not repair them, electricity to the City's residents would be disrupted.  This would affect the residents' health and safety.  Thus, the City acted pursuant to its police power, and the removal of the trees is not a constitutional violation.

Carrasco asserts that summary judgment should be denied because there is a genuine issue of material fact regarding the City's motivation for removing the trees.  First, he argues that at the time the trees were removed, the City had no plan to replace the electrical lines.  In support of this argument, Carrasco points out that the contract for the lines' replacement was not executed until after the tree removal.  This observation, however, does not controvert the declaration of the City's Maintenance Supervisor, who stated that the planning for the electrical line replacement began well before the trees were removed.

Carrasco also asserts that City's true motivation behind removing the trees was to beautify the area in preparation for a new housing development to be located south of Carrasco's property.  Carrasco's support for this assertion is found in his own declaration, where he states that he later "learned that the city cut the trees down for aesthetic reasons."  But Carrasco does not explain how, when, and from whom he learned this information.  Fed. R. Civ. P. 56(c)(4) requires an affidavit used to support or oppose a summary judgment motion "must be made on personal

---

[14] *Lech*, 791 F. App'x at 718-19 (quoting *Dodge's Bar & Grill, Inc. v. Johnson Cnty. Bd. of City Comm'rs*, 32 F.3d 1436, 1441 (10th Cir. 2994)).

knowledge, set out facts that would admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Carrasco's statement is not admissible because it is not based on personal knowledge and likely results from hearsay comments of an unidentified source. Therefore, it does not create a genuine issue of material fact as to the City's motivation in cutting down the trees.

Finally, Carrasco also asserts that his neighbor, Kratochvil, met with the City Mayor and police chief after the tree removal, and that the Mayor said that the City didn't need a reason to cut down the trees in the easement. These, statements, however, are inadmissible hearsay, which should be disregarded by a court in considering a summary judgment motion.[15] Furthermore, even if the statements were not hearsay, they do not contradict the Maintenance Supervisor's declaration stating that the City planned on repairing the electrical lines well before the trees were removed. Thus, Kratochvil's declaration as to the Mayor's comments also does not create a genuine issue of material fact.

The undisputed facts show that the City was acting according to its police power when it replaced the electrical lines within the utility easement on Carrasco's property. Therefore, the Court concludes that the tree removal was not a taking in violation of the Fifth Amendment. The City's Motion for Summary Judgment on this claim is granted.

**B. The City did not violate Carrasco's Fourteenth Amendment Procedural Due Process Right.**

Carrasco asserts that the City violated his procedural due process right under the Fourteenth Amendment because it removed the trees on his property without first providing notice of the

---

[15] *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (D. Kan. 2006). *See also Stevens v. Water Dist. One of Johnson Cnty.*, 561 F. Supp. 2d 1224, 1231-32 (D. Kan. 2008).

removal and a hearing.  The Due Process Clause of the Fourteenth Amendment forbids a state from depriving an individual "of life, liberty, or property, without due process of law."[16]  This clause "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests."[17]  To establish a procedural due process claim, a plaintiff must show that (1) he was deprived of a constitutionally protected liberty or property interest and (2) he was not "afforded an appropriate level of process."[18]  Here, the City argues that it is entitled to summary judgment because Carrasco did not have a protected property interest in the trees and because Carrasco had adequate post-removal remedies against the City under state law.

"To have a property interest, an individual 'must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it.' "[19]  "Property interests . . . are not created by the Constitution.  Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ."[20] "Thus, statutes, ordinances, contracts, implied contracts, and rules and understandings developed by state offices create and define constitutionally protected property interests."[21]  It is a plaintiff's burden to establish a protected property interest.[22]

---

[16] U.S. Const. amend. XIV, § 1.

[17] *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

[18] *Couture v. Bd. of Educ.*, 535 F.3d 1246, 1256 (10th Cir. 2008) (citations omitted).

[19] *Brown v. Univ. of Kan.*, 16 F. Supp. 3d 1275, 1288 (D. Kan. 2014) (quoting *Bd. of Regents of St. Colls. v. Roth*, 408 U.S. 564, 577 (1972)).

[20] *Roth*, 408 U.S. at 577.

[21] *Klaassen v. Univ. of Kan. Sch. of Med.*, 2015 WL 2400773, at *2 (D. Kan. 2015) (citing *Fisher Sand & Gravel, Co. v. Giron*, 465 F. App'x 774, 779 (10th Cir. 2012)).

[22] *See Simmons v. Uintah Health Care Special Serv. Dist.*, 364 F. App'x 507, 514 (10th Cir. 2010).

Case 6:20-cv-01322-EFM   Document 51   Filed 02/22/22   Page 9 of 18

Carrasco has failed to meet his burden in this case. Under Kansas easement law, Carrasco does not have a protected property interest in the trees because the undisputed facts show that the trees materially interfered with the City's easement. Furthermore, none of the Kansas statutes or cases that Carrasco points to as creating a protected property interest are applicable to this case.

    *1.    The City's utility easement allowed for the replacement of the underground electrical lines on Carrasco's property.*

Although Carrasco owned his land in fee simple, his ownership interest was subject to the City's utility easement. The Ramat Halom subdivision plat was filed with the Cowley County Register of Deeds in 1976 and included the dedication of a 20-foot easement for public utilities. The easement language expressly provides for the "installing, repairing, and maintaining" of electrical lines. The subdivision landowners also dedicated the public easement "for the use of constructing, operating, maintaining, and repairing all public utilities." When Carrasco purchased his property in 1992, the certified mortgagee title inspection document he received showed the 20-foot utility easement on the west side of the property, just as shown in the Ramat Halom plat. Carrasco thus had personal notice of the utility easement when he purchased the property. Additionally, he does not dispute its existence.

Under Kansas law, once an easement is formed, the landowner becomes the servient tenant and the easement holder becomes the dominant tenant.[23] "The servient tenant may make any use of his or her property which is consistent with or not calculated to interfere with the use of the easement granted."[24] To determine each party's rights under the easement, courts examine "the language of the grant and the extent of the dominant tenant's use of the easement at the time it was

---

[23] *Brown v. ConocoPhillips Pipeline Co.*, 47 Kan. App. 2d 26, 271 P.3d 1269, 1274 (2012) (citation omitted).

[24] *Id.*

-9-

granted."[25]   Furthermore, "[a]n obstruction or disturbance of an easement is something that wrongfully interferes with the privilege to which the dominant tenant is entitled by making its use of the easement less convenient and beneficial."[26]  But such obstruction is only actionable if it "is of such a material character as to interfere with the dominant tenant's reasonable enjoyment of the easement."[27]

In *Brown v. ConocoPhillips Pipeline Co.*, a landowner filed suit to prevent a gas company with a pipeline easement from cutting down a 30-year old oak tree growing in the easement.[28]  The district court concluded that the tree was not a material obstruction to the gas company's use of the easement.[29]  The Kansas Court of Appeals, however, reversed the trial court's decision finding that "[t]he risk of damage the tree roots could cause to the pipeline alone is sufficient to show that the tree materially interferes with Conoco's privilege to use its easement, let alone the undisputed testimony that the tree causes a significant interference with Conoco's ability to inspect its pipeline."[30]  The Court of Appeals further found that there was no dispute that tree roots can cause significant harm to the pipeline.[31]  Thus, the court concluded that the district court erred in enjoining the gas company from removing the tree from the easement.[32]

---

[25] *Id*. (citation omitted).

[26] *Id*.  (citation omitted).

[27] *Id*.  (citation omitted).

[28] *Id*. at 1272.

[29] *Id*. at 1275.

[30] *Id*. at 1276.

[31] *Id*.

[32] *Id*.

Here, Carrasco is the servient tenant, and the City is the dominant tenant. The undisputed facts show that Carrasco's trees were growing in the easement directly over two underground power lines that were malfunctioning and needed to be replaced. The trees were thus an obstruction to the City's right to repair the underground electrical lines. Therefore, the City properly exercised its rights under the easement by removing the trees and repairing the lines.

Carrasco argues that there is a genuine issue of material fact regarding whether the trees substantially interfered with the City's replacement of the electrical lines. This argument is based solely on the deposition testimony of Carrasco's neighbor, Mitchell Kratochvil, where he states that the City's discussions at the September 2021 City Council meeting were about buried powered lines in another neighborhood, not the Ramat Halom subdivision. Kratochvil, however, later testified that he wasn't present for that discussion at the meeting. Thus, his testimony is inadmissible and does not create a genuine issue of material fact regarding whether the trees materially interfered with the power lines.

Carrasco also attempts to create a genuine issue of material fact as to the City's need to remove the trees by pointing out that although electrical lines also ran through Kratochvil's property, the City did not require him to remove the fence and shed on the utility easement. Instead, the City buried the lines several feet from the fence and shed. Carrasco argues that because the City was able to install the new lines around Kratochvil's fence and shed, it similarly did not need to remove the trees on his property. But, as the City points out, the reasonable explanation for the discrepancy is that Carrasco's property contained the above-ground transformer box to which the power lines necessarily flowed. Additionally, unlike Carrasco's trees, Kratochvil's fence and shed did not pose a future risk to the underground lines. The tree roots can cause electrical lines to malfunction. Therefore, Carrasco's argument is not persuasive.

The Court is aware of the aesthetic and practical benefits that the trees may have provided to Carrasco's property, as well as the money he expended in maintaining them. But, the undisputed facts show that the trees materially interfered with the City's use of the easement. Thus, the City had the right to remove them under Kansas easement law.

2.     *Carrasco has not identified any Kansas law that gave him a protected property interest in the trees.*

As Carrasco points out, there is no Kansas authority directly on point governing a municipality's jurisdiction over trees in utility easements. Attempting to meet his burden to show that he has a protected property interest, Carrasco cites a line of Kansas cases and statutes discussing the rights of a property owner as to trees and shrubbery on alleys and streets. None of these cases or statutes, however, are applicable to this case. Furthermore, they do not grant Carrasco a protected property interest in the trees requiring the City to give notice and hold a hearing before exercising its rights under the easement.

The first authority Carrasco cites is *Mall v. C.&W Rural Electric Co-op Association*.[33]  In that case, the Kansas Supreme Court ruled that the plaintiff landowners could recover damages from a utility company that removed the plaintiffs' six elm trees on a highway right-of-way when installing above-ground power lines.[34]  In performing the work, the utility company relied upon a statute in the Electric Cooperative Act K.S.A. § 17-4604, which gives electric cooperatives the power to construct, maintain, repair, and operate electric transmission lines along public roads and highways.[35]  The *Mall* court noted that Kansas law allowed such construction without it being an

---

[33] 168 Kan. 518, 213 P.2d 993 (1950).

[34] *Id*. syl. ¶3.

[35] 213 P.2d at 995.

additional servitude for which compensation must be paid the abutting landowner.[36]   The court further noted that although Kansas law gives the utility companies broad authority, it did not "authorize [the defendant] to take private property without due process of law."[37]   According to the court, the highway authorities could have removed the trees if necessary to widen the road or construct drainage ditches, but the utility company must compensate the abutting property owner for any damage to his property.[38]

Although *Mall* and this case both involve the removal of trees for the installation of electrical lines, the Kansas Supreme Court's holding is not applicable here.   The *Mall* court construed and applied K.S.A. § 17-4604, which gave the utility company the right to install power lines based on the easement already granted to the highway authority to construct roads for public use.   Here, however, the City's easement is expressly set forth in the Ramat Halom plat.   It was not created under K.S.A. § 17-4604, and thus, the Court must construe the language of the easement and not the statute in determining whether the City can remove the trees.   Therefore, *Mall* is inapplicable to this case.

The next case cited by Carrasco is *City of Paola v. Wentz*.[39]   In that case, the plaintiff sought an injunction against the city to prevent it from removing three trees abutting his property.[40]   The city argued that the removal was necessary because it planned to build a sidewalk where the trees

---

[36] *Id*. at 996.

[37] *Id*.

[38] *Id*. at 996-97.

[39] 79 Kan. 148, 98 P. 775 (1908).

[40] 98 P. at 775.

were located.[41]  The Kansas Supreme Court found this justification was unreasonable because the city's ordinances did not authorize a sidewalk at that location.[42]  Thus, because the City was acting arbitrarily and without any legal authority, the court upheld the injunction preventing the City from removing the trees.[43]

Carrasco argues that like the defendant in *City of Paola*, the City acted arbitrarily and unreasonably when it removed his trees.  According to Carrasco, the City had no plan to replace the electrical lines when it removed the trees, and furthermore, after razing them, the City Mayor told Kratochvil that he did not need a reason to do so.  As discussed above, however, these arguments are not persuasive.  Carrasco has not controverted the declaration of the City Maintenance Supervisor who stated that the planning for the electrical line replacement began well before Carrasco's trees were removed.  And the City Mayor's statements to Kratochvil are inadmissible hearsay.  Thus, the uncontroverted evidence shows that the City's removal of the trees was not unreasonable.

Carrasco next briefly cites *Remington v. Walthall*[44] as authority for the proposition that "the court may presume good faith and intentions by cities in regard to tree removal.  But a city must provide more than mere lip-service for its reasoning." In that case, the city mayor cut down the plaintiff landowner's tree out of malice and in defiance of the City Council's order.[45]  The court found that the mayor could be held personally liable for destroying the tree because he acted

---

[41] *Id*. at 776.

[42] *Id*.

[43] *Id*. at 777.

[44] 82 Kan. 234, 108 P. 112 (1910).

[45] 108 P.2d at 112.

without legal authority.[46]  The instant case is easily distinguishable from that case, as there is no evidence that the City acted with malice and without legal authority when it removed Carrasco's trees.

Another case cited by Carrasco is *Heinzelman v. State Highway Commission*.[47]  In that case, the landowners sought an injunction to prevent the state and city from removing four trees abutting the plaintiff's property so that the city could construct a new sidewalk.[48]  The landowners argued that there were alternatives to constructing the sidewalk so that the trees would not need to be removed.[49]  In addressing Kansas law, the court noted

> [i]t is well settled in this state that an abutting lot owner has an interest and ownership in the shade trees planted and growing in the parking in front of his lots, which gives him a standing in court to prevent an unauthorized and unjustified destruction of the trees by officers or others.
>
> However, where a city adopts a plan to improve its streets by widening, grading or otherwise improving them, upon ground which has been dedicated for that purpose, and the execution of the plan requires the removal or destruction of shade trees growing within the lines of the street or sidewalk on which the improvement is made, their removal for the completion of such work affords no cause of action to the adjacent lot owner since his interest must yield where it conflicts with that of the community or as far as the rights of the public are concerned.[50]

The *Heinzelman* court held that the issue was whether the defendants acted arbitrarily and capriciously when adopting the plans that required tree removal.[51]  The court found that there was

---

[46] *Id*. at 113.

[47] 188 Kan. 129, 360 P.2d 1114 (1961).

[48] 360 P.2d at 1115.

[49] *Id*. at 1116.

[50] *Id*. at 1117 (citations omitted).

[51] *Id*. at 1118.

-15-

nothing in the record to show that the government's plans were arbitrary or unreasonable.[52]  Thus, a "mere difference of opinion" between the landowner and the governmental entities was not enough to stop the tree removal.[53]  Here, Carrasco disagrees with the City's decision to remove the trees.  But, as discussed above, he hasn't come forward with evidence to create a genuine issue of material fact that the removal was arbitrary and capricious.

The last case cited by Carrasco is *Holmes v. Sprint United Telephone of Kansas*.[54]  In this case, the plaintiff landowner sued a utility company for trespass after the utility company dug a trench within the utility easement on his property to bury a cable.[55]  The Kansas Court of Appeals ruled in favor of the utility company finding that the utility company's use of the easement was consistent with its purpose and digging a trench to bury the cable was reasonable.[56]  Likewise, the undisputed facts show that the City's use of the utility easement to replace the malfunctioning electrical lines was consistent with the easement's purpose and reasonable based on the uncontroverted facts.  This case thus actually supports the City's position more than it supports Carrasco's.

Carrasco also cites three Kansas statutes which he claims gave him a protected property interest in the trees.  K.S.A. § 12-3201 gives a city the authority to regulate by ordinance the planting, maintenance, and removal of trees on all streets, alleys, and public rights-of-way.  It further states that if an owner of property abutting the streets, alleys, and public rights-of-way fails

---

[52] *Id.*

[53] *Id.*

[54] 29 Kan. App. 2d 1019, 35 P.3d 928 (2001).

[55] 35 P.3d at 929.

[56] *Id.* at 931.

to maintain the trees, the city may, after providing notice, trim, maintain, or remove the trees, and assess the costs of such work against the abutting property owner.[57]  The reasonable interpretation of this statute is that costs may be assessed against a property owner to trim, maintain, or remove trees that the property owner does not maintain if the city provided prior notice of the work.  This statute does not grant a property owner a protected property interest in trees growing in a utility easement that interfere with the dominant tenant's easement rights.

Carrasco also cites K.S.A. § 12-3204 and K.S.A. § 12-3207.  But, K.S.A. § 12-3204 is inapplicable because it only applies to trees that are infected with disease or pests, and the City did not remove the trees in this case for that reason.  K.S.A. § 12-3207 gives a property owner, whose property abuts a street, title in the trees located between the curb and the property line so that the property owner may recover from a person, company, or corporation any injury or destruction to the tree.  K.S.A. § 12-3207, however, expressly exempts a property owner from recovering against a city "in the making of public improvements or in any other reasonable exercise of its authority over such streets . . . or the trees and shrubbery located thereon."  Thus, because Carrasco cannot bring an action against the City under K.S.A. § 12-3207, this statute does not create a "protected property interest."

Overall, the Court concludes that Carrasco has not established that he had a protected property interest in the trees planted in the utility easement on his property.  If a plaintiff fails to establish the first element of a due process claim, the Court need not consider whether the government employed an adequate level of procedural due process.[58]  Thus, the Court declines to

---

[57] K.S.A. § 12-3201.

[58] *Seifert v. Kan. City Kan. Cmty. Coll.*, 2010 WL 690938, at *8 (D. Kan. 2010).

consider both (1) the City's additional argument that Carrasco had an adequate state law remedy and (2) Carrasco's argument that he was deprived an adequate level of procedural due process. The Court grants summary judgment to the City on Carrasco's Fourteenth Amendment claim.

**IT IS THEREFORE ORDERED** that the City's Motion for Summary Judgment (Doc. 41) is **GRANTED**.

**IT IS SO ORDERED**.

This case is closed.

Dated this 22nd day of February, 2022.


ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE